FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2022 JAN -4  PM 1: 12

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

MARGARET BOTKINS, CLERK
CHEYENNE

MARGARET M. VIERBUCHEN

*Plaintiff,*

v.

JOSEPH R. BIDEN, Jr.
President of the United States

Civil Action No.: 22cv01-F

UNITED STATES OFFICE OF
PERSONNEL MANAGEMENT

KIRAN AHUJA, Director
United States Office of Personnel Management

GENERAL SERVICES ADMINISTRATION

ROBIN CARNAHAN, Administrator
General Services Administration

OFFICE OF MANAGEMENT AND BUDGET

SHALANDA YOUNG, Acting Director
Office of Management and Budget

SAFER FEDERAL WORKFORCE TASK FORCE
c/o the General Services Administration

JEFFREY ZIENTS, Co-Chair
Safer Federal Workforce Task Force and
COVID-19 Response Coordinator

UNITED STATES DEPARTMENT OF JUSTICE

MERRICK B. GARLAND, Attorney General

LEE J. LOFTHUS
Assistant Attorney General for Administration

L. ROBERT MURRAY
United States Attorney, District of Wyoming

     *Defendants.*

_____/

## COMPLAINT

1.     On September 9, 2021, President Joseph R. Biden announced that he would sign an Executive Order to "require all Executive branch Federal employees to be vaccinated—*all*." Remarks on the COVID-19 Response and National Vaccination Efforts, 2021 Daily Comp. Pres. Docs. 3 (Sept. 9, 2021), https://bit.ly/3EyLC92 (emphasis added). No law passed by Congress, however, authorizes such a sweeping intrusion into the lives and medical decisions of America's federal civil servants. Nor does the Constitution give the President such monarchical power.

2.     Margaret Vierbuchen, the plaintiff, is an Assistant United States Attorney. She has been a dedicated public servant for over twenty-five years—investigating and prosecuting organized crime, narcotics trafficking, money laundering, racketeering, fraud, and more—at both the state and federal levels.

3.     Ms. Vierbuchen has recovered from COVID-19, and she has naturally acquired antibodies to COVID-19. She refuses vaccination. For her failure to obey the President's illegal command, the Defendants have threatened that she will lose her job and, contrary to federal law, they will strip away the retirement benefits she has earned through her service.

2

4.     The President's order—carried out by his subordinates—exceeds the lawful authority of his office. Facially and as applied, the vaccine mandate violates Ms. Vierbuchen's Due Process rights and liberty interests, including her right to privacy and her right to be free from the forcible injection of unwanted and unnecessary medication. She seeks relief from this Court.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702. Ms. Vierbuchen has a cause of action in equity and under 28 U.S.C. § 1651 to declare unlawful and to enjoin Executive Branch action violating the Constitution. 28 U.S.C. §§ 2201 and 2202 authorize declaratory and injunctive relief. The Court has jurisdiction under 28 U.S.C. § 1361 to issue a writ of mandamus, preventing the Defendants from acting unconstitutionally and beyond their statutorily delegated authority.

6.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

## PARTIES

7.     Ms. Vierbuchen is a federal employee and a resident of the State of Wyoming. She began her federal service in 1988 as a student intern with the U.S. Drug Enforcement Administration ("DEA") investigating international drug traffickers. She joined the DEA full-time in 1991 as an Intelligence Research Specialist, continuing to perform investigations and support to DEA field offices—domestically and internationally—until 1996.

8.     She has since served the State of Maryland and the United States as a trial attorney, prosecuting dangerous criminals. Ms. Vierbuchen returned to federal service in 2008 for the United States Department of Justice and worked as a criminal trial attorney for over two years in the Asset Forfeiture and Money Laundering Section, four years in the Organized Crime and Gang Section, and over six years as an Assistant United States Attorney in New Mexico and Wyoming.

9.     Ms. Vierbuchen contracted COVID-19 in November 2020 and recovered, thereby acquiring natural immunity against the disease. According to a summary of clinical studies published on September 21, 2021, and acknowledged by the Centers for Disease Control and Prevention, "natural immunity in COVID-recovered individuals is, at least, equivalent to the protection afforded by full vaccination of COVID-naïve populations," "vaccination of COVID-recovered individuals should be subject to clinical equipoise and individual preference," and "National policy should reflect the need for clinical equipoise and restraint in the decision to vaccinate [COVID-recovered] individuals by mandate." Mahesh B. Shenai, et al, *Equivalency of Protection from Natural Immunity in COVID-19 Recovered Versus Fully Vaccinated Persons: A Systematic Review and Pooled Analysis,* medRxiv, 2, 18 (2021) https://www.medrxiv.org/content/10.1101/2021.09.12.21263461v1.full-text;   Centers for Disease Control and Prevention, *Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced     Immunity*     at     n.79     (Oct.     29,     2021) https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-

4

immunity.html#print.

10.     Defendant Joseph R. Biden is the President of the United States. Without legal authority and in violation of Ms. Vierbuchen's constitutional rights, he has ordered Ms. Vierbuchen submit to vaccination. Ms. Vierbuchen sues him in his official capacity.

11.     Defendant United States Office of Personnel Management ("OPM") is a federal agency. OPM serves as the federal government's chief human resources and personnel policy manager. Without legal authority and in violation of Ms. Vierbuchen's constitutional rights, OPM is implementing the President's vaccine mandate.

12.     Defendant Kiran Ahuja is Director of OPM and co-chair of Defendant Safer Federal Workforce Task Force. Without legal authority and in violation of Ms. Vierbuchen's constitutional rights, she is implementing the President's vaccine mandate. Ms. Vierbuchen sues her in her official capacities.

13.     Defendant the General Services Agency ("GSA") is a federal agency established to manage and support the basic functioning of federal agencies. Without legal authority and in violation of Ms. Vierbuchen's constitutional rights, GSA is implementing the President's vaccine mandate.

14.     Defendant Robin Carnahan is the Administrator of the GSA and co-chair of Defendant Safer Federal Workforce Task Force. Without legal authority and

5

in violation of Ms. Vierbuchen's constitutional rights, she is implementing the President's vaccine mandate. Ms. Vierbuchen sues her in her official capacities.

15.     Defendant the Office of Management and Budget ("OMB") is the largest office within the Executive Office of the President of the United States. Without legal authority and in violation of Ms. Vierbuchen's constitutional rights, OMB is implementing the President's vaccine mandate.

16.     Defendant Shalanda Young is the Acting Director of OMB. Without legal authority and in violation of Ms. Vierbuchen's constitutional rights, she is implementing the President's vaccine mandate. Ms. Vierbuchen sues her in her official capacity.

17.     Defendant the Safer Federal Workforce Task Force ("Task Force") was established January 20, 2021, by Executive Order 13,991, 86 Fed. Reg. 7045 (Jan. 20, 2021). Without legal authority and in violation of Ms. Vierbuchen's constitutional rights, the Task Force is implementing the President's vaccine mandate. Although Executive Order 13,991 cites 5 U.S.C. § 7902(c) as authorizing the Task Force's creation and activities, the statute does not do so, and all the Task Force's activities are *ultra vires* and unlawful.

18.     Defendant Jeffrey Zients is co-chair of the Defendant Task Force and the President's COVID-19 "Response Coordinator." Without legal authority and in violation of Ms. Vierbuchen's constitutional rights, he is implementing the President's vaccine mandate. Ms. Vierbuchen sues him in his official capacity.

19.     Defendant the United States Department of Justice ("DOJ") is a federal agency employing Ms. Vierbuchen. Without legal authority and in violation of Ms. Vierbuchen's constitutional rights, it is implementing the President's vaccine mandate.

20.     Defendant Merrick B. Garland is the Attorney General. Without legal authority and in violation of Ms. Vierbuchen's constitutional rights, he is implementing the President's vaccine mandate. Ms. Vierbuchen sues him in his official capacity.

21.     Defendant Lee J. Lofthus is the Assistant Attorney General for Administration within DOJ. Without legal authority and in violation of Ms. Vierbuchen's constitutional rights, he is implementing the President's vaccine mandate. Ms. Vierbuchen sues him in his official capacity.

22.     Defendant L. Robert Murray is the United States Attorney for the District of Wyoming. Without legal authority and in violation of Ms. Vierbuchen's constitutional rights, he is implementing the President's vaccine mandate. Ms. Vierbuchen sues him in his official capacity.

## FACTUAL BACKGROUND

*Orders & Guidance: Defendants Oppose Vaccine Mandates*

23.     Before entering office, then-candidate Biden rejected the idea of mandatory vaccinations: "No I don't think [vaccines] should be mandatory." *See, e.g.*, Jacob Jarvis, *Fact Check: Did Joe Biden Reject Idea of Mandatory Vaccines in*

*December 2020*, Newsweek (Sept. 10, 2021), https://www.newsweek.com/fact-check-joe-biden-no-vaccines-mandatory-december-2020-1627774.

24.     On January 20, 2021, the President issued Executive Order 13,991. 86 Fed. Reg. 7045 (Jan. 20, 2021). Exhibit 1.

25.     Executive Order 13,991 established the Task Force. "[S]ection 7902(c) of title 5, United States Code" is the sole specific legal authority cited in support of its creation and activities. *Id.*

26.     The Task Force's mission is to "provide ongoing guidance to heads of agencies" on the operation of government activities and the safety of federal employees during the COVID-19 pandemic. *Id.*

27.     On February 5, 2021, DOJ issued guidance that stated, "At present, the Department is not requiring employees to be vaccinated, and will provide additional guidance about requiring vaccinations at a future date." Guidance: Coronavirus/COVID-19 Questions Regarding Vaccinations at 1 ("February Guidance"). Exhibit 2. The February Guidance acknowledged recent Equal Employment Opportunity Commission guidance on vaccine mandates but declined to impose such a mandate at DOJ. Instead, it stated DOJ components "should provide alternatives, such as telework, for employees who cannot receive the vaccine due to personal or health reasons." *Id.*

28.     The February Guidance cites an article for private employers by the Hogan Lovells law firm for the proposition that a "mandatory vaccination policy is

8

lawful," but then notes that "there are many risks that accompany such mandatory programs." *Id.* at 2. The February Guidance concludes "[a]s an alternative for the time being, Components should strongly consider policies that encourage vaccination and continue to consider alternative work options for unvaccinated employees." *Id.*

29.     DOJ has not amended or rescinded the February Guidance.

30.     On February 16, 2021, Defendant Lofthus issued the 2021 Department of Justice COVID-19 Workplace Safety Plan ("Safety Plan"). Exhibit 3.

31.     The Safety Plan imposes no requirement that Ms. Vierbuchen, or any other employee, submit to vaccination.

32.     The Safety Plan references vaccines twice.

33.     First, the Safety Plan envisions that the 25% occupancy limitations on DOJ facilities could increase as more employees are vaccinated, if DOJ's COVID-19 Coordination Team recommends this change. *Id.* at 6.

34.     Second, the Safety Plan states that "[a]s vaccine supplies become available to the Department for its employees, [the Justice Management Division, which Defendant Lofthus supervises] will issue separate guidance regarding access to vaccines. **The provisions in this memorandum continue to apply to all employees, even those who receive vaccinations.**" *Id.* at 10 (emphasis in original).

35.     DOJ has not amended or rescinded the Safety Plan.

36.     DOJ's policy, as expressed in the February Guidance, is that "[i]f an employee refuses the offer to get vaccinated, he or she should not be required to disclose any further reasoning. Such disclosures may be unnecessary unless the employer mandates vaccinations and is unable to provide alternative work options." Exhibit 2 at 2.

37.     On June 24, 2021, the Deputy Attorney General, Lisa Monaco, issued a memorandum ("June Memo") reaffirming that position. The June Memo stated:

> At present, agencies are not prohibited from asking federal employees and contractors to share information about their vaccination status, and federal employees and contractors may *voluntarily* share such information. Although at this time you generally will not be required to disclose such information to the Department, there may be circumstances where your official duties involve engaging with third parties that require disclosure of your vaccination status. Component leadership will help you navigate those requirements consistent with mission responsibilities; however, the Department cannot exempt you from externally-imposed vaccine disclosure requirements.

U.S. Dep't of Justice, Memorandum for All Department Employees and Contractors from the Deputy Attorney General, Updates on Workplace Planning at 2-3 (June 24, 2021). Exhibit 4.

38.     The June Memo notes that "there is no one-size-fits-all solution" and that should an employee or contractor voluntarily disclose their vaccination status, "The Department will protect that information, keep it confidential, and store it only where required and consistent with the Privacy Act." *Id.* at 2-3.

39.     In July 2021, the President's spokesperson stated that imposing a vaccine mandate was not the role of the federal government. Press Briefing by Press

Secretary Jen Psaki, July 23, 2021, https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/23/press-briefing-by-press-secretary-jen-psaki-july-23-2021/ ("Q ... Is that a sign that perhaps the federal government should step in and issue mandates? . . . Ms. Psaki: . . . one, that's not the role of the federal government; that is the role that institutions, private-sector entities, and others may take.").

40.    On August 13, 2021, Defendant Lofthus issued guidance reaffirming that DOJ would not issue a vaccine mandate. Rather, DOJ would impose different protocols for "fully vaccinated" individuals as opposed to "those who are not yet fully vaccinated or decline to respond." U.S. Dep't of Justice, Guidance for Department Employees, Contractors, and Visitors Concerning COVID-19 Vaccination Attestation Procedures (August 13, 2021) ("August Guidance"). Exhibit 5.

41.    The August Guidance continued, "These new policies and procedures regarding COVID-19 vaccination/testing status are part of many additional changes to our workplace policies that will be introduced in the near future, including policies for travel and attendance at large meetings or events, and our coming Workplace Safety Plan update." *Id.* at 3.

### *About Face: Newfound Executive Power*

42.    Then the President changed his mind.

43.    On September 9, 2021, the President said that his "patience is wearing thin," and told unvaccinated Americans that "your refusal [to get vaccinated] has cost us all." Morgan Chalfant, *Biden Blames Unvaccinated for COVID-19 Slog*, The Hill

(Sept. 9, 2001), https://thehill.com/policy/healthcare/571593-biden-blames-unvaccinated-for-covid-19s-slog. On that day, he issued Executive Order No. 14,043. 86 Fed. Reg. 50989 (Sep. 14, 2021). Exhibit 6.

44.     Executive Order 14,043 requires all federal agencies to "implement ... a program to requir[e] COVID-19 vaccinations for all of its federal employees, with exceptions only as required by law." It directs "the Task Force [to] issue guidance within 7 days of the date of this order on agency implementation of this requirement for all agencies covered by this order."

45.     As explained, *infra*, this order is *ultra vires* and contrary to the express terms of 5 U.S.C. § 7902(c), which is supposed authority cited for the Task Force's formation and operations under Executive Order 13,991.

46.     On September 13, 2021, the Task Force published model "Safety Principles" setting November 22, 2021, as a deadline for all federal employees to be "fully vaccinated." It did not cite competent or specific statutory authority for this action. *See* Safer Federal Workforce, *COVID-19 Workplace Safety: Agency Model Safety Principles,* White House (Sept. 13, 2021) https://www.saferfederalworkforce.gov/downloads/updates%20to%20model%20safety%20principles%209.13.21.pdf. Exhibit 7.

47.     Although DOJ had issued its Safety Plan and February Guidance on COVID-19 protocols, neither of these required an injection. Neither were amended to reflect a change in direction.

48.     Instead, on September 17, 2021, DOJ, through Defendant Lofthus,

issued its first order to Ms. Vierbuchen, stating:

> On September 9, President Biden signed Executive Order 14043
> mandating COVID-19 vaccinations for all Executive Branch employees,
> subject to limited exceptions for disabilities or religious objections. **All
> Department employees (whether teleworking or reporting to a
> Department worksite) who are not excepted for a religious or
> qualifying medical reason must be fully vaccinated no later than
> November 22. Unless you are approved for an exception, testing
> for COVID-19 is not an alternative to the vaccination
> requirement.**

Exhibit 8 (emphasis in original).

49.     For the reasons described, *infra*, the Defendants did not have the

authority to order Ms. Vierbuchen to receive a vaccine, and the order was *ultra vires*.

50.     On September 24, 2021, the President again attacked and stigmatized

unvaccinated individuals for not "doing the right thing" and "causing a lot of damage"

and alleged that their "refusal to get vaccinated has cost all of us." He continued

saying, "this is a pandemic of the unvaccinated. And it's caused by the fact that[] . . .

we still have over 70 million Americans who have failed to get a single shot." *Remarks

by President Biden on the COVID-19 Response and the Vaccination Program*, WH.gov

(Sept.      24,      2021),      https://www.whitehouse.gov/briefing-room/speeches-

remarks/2021/09/24/remarks-by-president-biden-on-the-covid-19-response-and-the-

vaccination-program-8/.

51.     This statement was made despite evidence—available then and

continuing to grow—that the vaccines do not prevent the infection or spread of

COVID-19. It was also made despite the fact there is a plethora of evidence of "breakthrough" cases—cases of COVID-19 in "fully vaccinated" individuals.

52.     On October 1, 2021, OPM issued the *Memorandum for Heads of Executive Departments and Agencies, Guidance on Applying Coronavirus Disease 2019 Vaccination Requirements to New Hires – Executive Order 14043* (Oct. 1, 2021) https://www.opm.gov/policy-data-oversight/covid-19/director-memo-on-hiring-guidance-vaccine-requirements.pdf. Exhibit 9.

53.     OPM's memorandum cited two legal authorities: Executive Order 14,043 and "guidance" issued by "the Safer Federal Workforce Task Force, established by EO 13,991 (January 20, 2021) … [specifying] that agencies should require all of their employees, with exceptions only as required by law, to be fully vaccinated by November 22, 2021." *Id.*

54.     Although styled as guidance for *new hires*, the memo includes a section titled "Current Federal Employees" in which OPM specifies a vaccination schedule that it purports to apply to *current employees*. The memo does not address or explain on what authority it can apply to current employees.

55.     Also, on October 1, 2021, OPM issued enforcement guidance "to assist agencies in implementing" Executive Order 14,043. *Guidance on Enforcement of Coronavirus Disease 2019 Vaccination Requirement for Federal Employees – Executive Order 14,043* at ¶ 1, https://www.opm.gov/policy-data-oversight/covid-19/enforcement-guidance-faqs.pdf. Exhibit 10.

56.   Here, OPM directed agencies to advise federal employees that "failure to comply" with the President's vaccine mandate "will result in disciplinary action up to and including removal or termination" as "part of the education process." *Id.* at ¶ 4. OPM justified its discipline by saying, "If an employee receives a direct order to receive a vaccine as required under EO 14043 and refuses, this is an act of misconduct." *Id.* at ¶ 9.

57.   OPM does not possess the authority to lawfully issue such an order, nor does any other Defendant.

<em>DOJ Orders and Pressure to Vaccinate</em>

58.   Also on October 1, 2021, DOJ notified Ms. Vierbuchen that it was requiring her to attest to her vaccination status by October 11, 2021, despite the statements of the Deputy Attorney General in the June Memo. Exhibit 11.

59.   Relying on the September 17, 2021, email from Defendant Lofthus, Exhibit 8, *supra*, DOJ said:

> As you will recall, on September 17, 2021, the AAG for Administration wrote to all DOJ employees and advised them that shortly they would be asked to attest to their vaccination status (See attached email). This message outlines the attestation process. Beginning Monday, October 4, 2021, all USAO and EOUSA personnel will have seven calendar days to report their vaccination status and upload proof of vaccination using the new *iReport* portal, *COVID Check*. All employees (FTE, SAUSAs, and Interns) must enter the portal through the *iReport* application on their computers to fill in the requested information and documentation establishing proof that they have been vaccinated. Detailed instructions on the procedures, the timelines for completion, and guidance for those requesting a Reasonable Accommodation for medical or religious reasons are attached. As noted in the AAG's September 17 message, in addition to reporting your vaccination status, you must provide

documentation proving vaccination by uploading an image of the documentation to the online form. Until employees upload the required documentation, their attestation is not complete. Employees who have lost their CDC vaccination card or other documentation must obtain duplicate documentation and reenter the iReport portal (COVID Check) to update their attestation status in order to complete the attestation process.

60.     On October 8, 2021, DOJ, through Defendant Lofthus, sent an email to Ms. Vierbuchen entitled "IMPORTANT WORKFORCE MESSAGE – COVID-19 Vaccination Requirements and Upcoming Deadlines." The email reiterated the "target dates for your vaccine doses" to be complaint with "the President's November 22 deadline." Exhibit 12.

61.     Due to her workload, Ms. Vierbuchen missed the October 8, 2021, deadline (she was on annual leave October 8 to October 15). On October 13 her direct supervisor emailed her stating that she needed to complete the form that day or face disciplinary action. She was unable to complete the form from her mobile phone and Defendants extended the deadline for her until October 18. Exhibit 13.

62.     On October 18, 2021, Ms. Vierbuchen completed the required online reporting. As DOJ no longer allowed her to decline to respond about her medical status, she selected "not vaccinated." That same day, she requested a medical exception and reasonable accommodation to the vaccine mandate because she has naturally acquired immunity and does not want or need an injection to develop COVID-19 antibodies.

63. On October 21, 2021, DOJ instructed Ms. Vierbuchen to leave the office and work from home because she was not vaccinated and did not show proof of a negative COVID-19 test within the past three days. When Ms. Vierbuchen showed proof of her negative test result, she was allowed to remain at work and instructed to continue providing COVID-19 test results every three days.

64. On October 26, 2021, a human resources officer for DOJ informed Ms. Vierbuchen that she would be stripped of all federal retirement benefits if she was terminated because of her failure to submit to the President's vaccine mandate. The human resources officer informed Ms. Vierbuchen that she could keep her retirement benefits only if she resigned prior to discipline, an action that could hinder future attempts to challenge the President's illegal order. Ironically, later that day, Ms. Vierbuchen received a 20-year pin at an office-wide ceremony to celebrate her years of federal service.

65. On November 1, 2021, Ms. Vierbuchen presented proof to DOJ officials that she continues to have antibodies to COVID-19.

66. On November 8, 2021, DOJ denied Ms. Vierbuchen's reasonable accommodation request and advised her that she had 45 days to appeal the agency's decision to the EEOC.

67. On November 19, 2021, the Defendants again reiterated their order to Ms. Vierbuchen to submit to vaccination. Exhibit 14.

68.     This email summarized the chain of purported authority and the history

of orders to Ms. Vierbuchen, saying:

> This e-mail constitutes a written counseling and instruction related to
> your failure to comply with the Department of Justice's requirement
> that all Department employees be fully vaccinated by November 22,
> 2021 (unless approved for an exception due to a religious or medical
> reason). The Assistant Attorney General (AAG) for Administration
> notified all Department employees of this requirement by e-mail dated
> September 17, 2021. Attachment 1. The email specified that employees
> would have to complete the required vaccination dose(s) by November 8,
> 2021 in order to become "fully vaccinated" by the November 21 [sic]
> deadline. This requirement was reiterated in the AAG's email dated
> October 8, 2021. Attachment 2.

69.     After months of pressure and orders, on December 27, 2021, the

President admitted "there is no federal solution" to the COVID-19 pandemic

suggesting that governors solve it at the state level. Tim Hains, *President Biden Tells

Governors: "There Is No Federal Solution" To Covid*, REAL CLEAR POLITICS (Dec. 27,

2021) https://www.realclearpolitics.com/video/2021/12/27/president_biden_there_is_

no_federal_solution_to_covid_test_shortage.html.

## LEGAL AUTHORITIES

*The President Lacks Express Authority to Impose a Vaccine Mandate*

70.     Executive Order 14,043 cites three statutes as the authority for the

vaccine mandate: 5 U.S.C. §§ 3301, 3302, and 7301. None of these statutes,

individually or collectively, authorize the President to order Ms. Vierbuchen to

submit to vaccination, directly or through his subordinates.

71.     Section 3301—titled "Civil Service; generally"—does not authorize a

vaccine mandate. It provides:

> The President may—(1) *prescribe such regulations for the admission of*
> *individuals into the civil service* in the executive branch as will best
> promote the efficiency of that service; (2) ascertain the fitness of
> applicants as to age, health, character, knowledge, and ability for the
> employment sought; and (3) appoint and prescribe the duties of
> individuals to make inquiries for the purpose of this section.

5 U.S.C. § 3301 (emphasis added).

72.     Section 3302—titled "Competitive service; rules"—does not authorize a

vaccine mandate by Executive Order. It provides:

> The President may *prescribe rules governing the competitive service.* The
> rules shall provide, as nearly as conditions of good administration
> warrant, for—(1) necessary exceptions of positions from the competitive
> service; and (2) necessary exceptions from the provisions of sections
> 2951, 3304(a), 3321, 7202, and 7203 of this title. Each officer and
> individual employed in an agency to which the rules apply shall aid in
> *carrying out the rules.*

5 U.S.C. § 3302 (emphasis added).

73.     Section 7301—titled "Presidential regulations"—does not authorize a

vaccine mandate. It provides "The President may *prescribe regulations for the conduct*

*of employees in the executive branch.*" 5 U.S.C. § 7301 (emphasis added).

74.     Quite obviously, the provisions do not expressly delegate the authority

to the President to issue a vaccine mandate.

*The President Lacks Implicit Authority to Impose a*
*Vaccine Mandate: There is No Elephant in this Mousehole*

75.     The President also lacks implicit authority to impose a vaccine mandate.

76.     Congress does not hide an elephant the size of a vaccine mandate in a mousehole of this nature. *See Whitman v. Am. Trucking Ass'n,* 531 U.S. 457, 468 (2001); *Banks v. Booth,* 3 F.4th 445, 449 (D.C. Cir. 2021).

77.     Courts "expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance.'" *Alabama Assoc. of Realtors v. Dep't of Health and Human Servs.*, 141 S. Ct. 2485, 2489 (2021) (quoting *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014)). The President's vaccine mandate is precisely such a claim of power.

78.     The "economic and political significance" of the vaccine mandate is unmistakable. *Id.* OPM estimates that the federal workforce comprises 2.1 million civilian employees. *See* Julie Jennings & Jared C. Nagel, *Federal Workforce Statistics Sources: OPM and OMB*, Cong. Research Serv., at 1 (June 24, 2021). The mandate prescribed by Executive Order 14,043 falls on all of them—along with their families and dependents.

79.     By design, only a limited number of employees will receive an exception based on either a medical condition or a religious objection. *See* 86 Fed. Reg. at 50,990 (declaring that "[e]ach [federal] agency shall implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees, with exceptions only as required by law."). *See also* Letter from Rep. James Comer, Ranking Member, House Committee on Oversight and Reform to Director Kiran Ahuja, Administrator Robin Carnahan, and the Hon. Shalanda Young

at 2 (Oct. 27, 2021) *available at* https://republicans-oversight.house.gov/wp-content/uploads/2021/10/Letter-to-OPM-OMB-and-GSA-vaccine-mandate.pdf (referencing an October 7, 2021, Biden Administration briefing to Congress, in which Administration officials represented there would be extremely few exemptions from the mandate, the letter states:

> [A]s represented to our staff, the Biden Administration may intend to allow medically-related exemptions only for those already proven to be allergic to available vaccines and those under other exemptions yet to be specified by the Centers for Disease Control and Prevention (CDC). The possibility of exemptions for those already possessing natural immunity to COVID-19 was not adequately addressed by the President's orders, and it was likewise inadequately addressed by the briefing ... The scope of religious exemptions also was insufficiently addressed, and there as yet seems to be no room for exemptions based on personal reasons like those that would validly lead an employee, in consultation with their doctor, to decline vaccination.)

As further evidence that the Administration is pressuring agencies to approve as few exemptions as possible, on December 29, 2021, the New York Post reported that the United States Marine Corps had granted precisely zero religious exemptions. Callie Patteson, *Unvaccinated Marines Claim COVID Mandate 'Purge' as All Religious Exemption Bids are Denied*, NEW YORK POST (Dec. 29, 2021) https://nypost.com/2021/12/29/marines-havent-approved-any-religious-exemptions-for-covid-19-vaccine/.

80.     The President's mandate is also a matter of serious political controversy.

81.     The significance of the President's vaccine mandate is also manifest by its "intru[sion] into an area that is the particular domain of state law," since "[o]ur

Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States." *Alabama Assoc. of Realtors*, 141 S. Ct. at 2489, *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905)).

*Previous Vaccine Mandates Have Required Congressionally Enacted Statutes*

82.    The Defendants' "claim of expansive authority" over the personal medical decisions of civilian personnel is "unprecedented." *Cf. Alabama Assoc. of Realtors*, 141 S. Ct. at 2489.

83.    Never has the executive branch claimed authority to compel all federal civilian employees to submit to the forcible injection of medication against their will.

84.    In fact, in the past when the government required anthrax vaccines for some defense-related personnel, Congress specifically authorized mandatory vaccination. They did so for a limited group of federal civilian employees who were deemed "emergency essential employees" with a duty to provide immediate and continuing support for combat operations or to support maintenance and repair of combat essential systems of the armed forces. And they did so with advance notice. *See* 10 U.S.C. §§ 1580, 1580a. Congress knows how to delegate vaccination authority to the Executive branch.

85.    Congress has legislated repeatedly in response to the COVID-19 pandemic—enacting at least 25 new laws pertaining to COVID-related emergencies.

22

Not once has it come remotely close to enacting a vaccine mandate for the federal civilian workforce. *Alabama Assoc. of Realtors*, 141 S. Ct. at 2489.

86. Executive Order 14,043 is an unprecedented, unlawful command and it is not supported by the statutes it cites as authority—either explicitly or implicitly.

*The Task Force Has No Authority to Issue Binding Guidance*

87. Nor does the Task Force have the authority to issue such a mandate.

88. The Task Force's origin document, Executive Order 13,391, cites only to 5 U.S.C. § 7902(c) for authority. Section 7902(c) has two subparagraphs. Neither one confers upon the Task Force the power to issue "guidance" imposing a vaccine mandate as a condition of federal civilian employment.

89. 5 U.S.C. § 7902(c) provides:

The President may (1) establish by Executive order a safety council composed of representatives of the agencies and of labor organizations representing employees to serve as an advisory body to the Secretary [of Labor] in furtherance of the safety program carried out by the Secretary under subsection (b) of this section; and (2) undertake such other measures as he considers proper to prevent injuries and accidents to employees of the agencies.

90. [S]ubsection (b)—that is, 5 U.S.C. § 7902(b)—authorizes the Secretary of Labor "to carry out a safety program under section 941(b)(1) of title 33 covering the employment of each employee of an agency."

91. 33 U.S.C. § 941(b)(1), in turn, authorizes the Secretary of Labor "to make studies and investigations with respect to safety provisions and the causes and prevention of injuries in employments covered by this chapter, and in making such

23

studies and investigations to cooperate with any agency of the United States or with any State agency engaged in similar work."

92.     The referenced "chapter" is chapter 18 of title 33, United States Code, entitled "Longshore and Harbor Workers' Compensation," and all its sections address this topic.

93.     Under 5 U.S.C. § 7902(c)(1) "The President may establish by Executive order a safety council." But the Task Force cannot be such a safety council for three reasons.

94.     First, a safety council under the statute must be "composed of representatives of the agencies and of labor organizations representing employees." The Task Force consists only of agency heads.

95.     Second, a safety council only "serve[s] as an advisory body to the Secretary [of Labor]." According to Executive Order 13,991, the Task Force "provide[s] ongoing guidance to heads of agencies on the operation of the Federal Government, the safety of its employees, and the continuity of Government functions during the COVID-19 pandemic." The Task Force's mission is broader than the statutory authority of a safety council.

96.     Third, a safety council exists to advise the Secretary of Labor "in furtherance of the safety program carried out by the Secretary" "under section 941(b)(1) of title 33." That section authorizes the Secretary of Labor "to make studies and investigations with respect to safety provisions and the causes and prevention of

injuries in employments covered by this chapter," that is, chapter 18 of title 33, which regulates longshore and harbor workers' compensation. 33 U.S.C. § 941(b)(1). The Task Force purports to provide "guidance" on safe workplaces in the context of the COVID-19 pandemic—a mandate far broader than regulating longshoreman.

97.     Moreover, the Task Force is not assisting, and has never assisted, the Secretary of Labor in making studies and investigations under chapter 18 of title 33, the Occupational and Health Safety Act, or anything else.

98.     Section 7902(c)(2) authorizes the President to "undertake such other measures as he considers proper to prevent injuries and accidents to employees of the agencies."

99.     But the Task Force is not the President.

100.    Moreover, a virus is neither an "injury" nor an "accident" according to the ordinary public meaning of those terms at the time of enactment. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020); *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Labor*, 2021 WL 5279381 (5th Cir. 2021).

101.    And the President's statutory power to "undertake such other measures as he considers proper to prevent injuries and accidents to employees of the agencies" is cabined by the Secretary of Labor's "safety program" for federal workers under 33 U.S.C. § 941(b)(1). *Yates v. United States,* 574 U.S. 528, 537-38 (2015). Again, Congress does not hide an elephant the size of a vaccine mandate in a mousehole of

25

this nature. *See Whitman v. Am. Trucking Ass'n,* 531 U.S. 457, 468 (2001); *Banks v. Booth,* 3 F.4th 445, 449 (D.C. Cir. 2021).

102.   Thus, the Task Force is not a safety council under 5 U.S.C. § 7902(c).

103.   Even if it were, based on the plain language of the statute, a safety council has no authority to issue binding guidance on all federal agencies, writ large. At most it can provide advice and council to the Secretary of Labor "in furtherance of the safety program carried out by the Secretary" in specified instances.

104.   Finally, the Defendants seem to acknowledge—in other federal litigation—that the Task Force does not have the Authority to issue binding guidance. *See Rodden v. Fauci,* Case No. 3:21-cv-00317 (S.D. Tex.), ECF No. 23 at 30-31 (Defendants' brief opposing preliminary injunction arguing that the Task Force "is not on its own binding on the public, nor even on any federal agency."); ECF No. 30 at 6 (District Court Order stating, "But, the defendants correctly note, the Task Force guidance is just that—"guidance"—and is nonbinding on the agencies it seeks to guide.").

105.   Thus, the Task Force cannot be the source of authority for a legitimate order to Ms. Vierbuchen to submit to vaccination.

### The Office of Personnel Management

106.   Neither the October 1 memorandum nor guidance from OPM can be the source of authority for the mandate. As support, that memo cites only to E.O. 14,043 and the Task Force Guidance. *See* ¶¶ 52-56, *supra.* For the reasons just discussed,

and because Ms. Vierbuchen is not a "new hire" these cannot be the source of any lawful authority for Defendants to order her to submit to vaccination.

107.   To the extent that any of the statutes do authorize the President—and OPM by delegation—to issue such a mandate, which they do not, they authorize him to do so only by rule or regulation.

108.   The October 1 memorandum is not a rule within the meaning of the Administrative Procedure Act.

### The Department of Justice

109.   DOJ has not cited any authority other than the President's Executive Orders as the basis for its orders to Ms. Vierbuchen to submit to vaccination.

110.   Neither the February Guidance nor the Safety Plan require vaccination.

111.   Every order to Ms. Vierbuchen to submit to vaccination has cited to the President's vaccine mandate and the November 22 deadline.

112.   DOJ has not cited any independent authority to support its orders to Ms. Vierbuchen to submit to vaccination.

### Conclusion

113.   Because of her natural immunity, Ms. Vierbuchen is at least similarly situated to vaccinated employees with respect to health risk and transmission. Shenai, at 2, 18; NIH Research Matters, "Lasting immunity found after recovery from COVID-19" (Jan. 26, 2021) available at https://www.nih.gov/news-events/nih-research-matters/lasting-immunity-found-after-recovery-covid-19 (Stating, "The

results provide hope that people receiving SARS-CoV-2 vaccines *will develop similar lasting immune memories after vaccination*.") (emphasis added).

114.   Nevertheless, for refusing to submit to the President's vaccine mandate and exercising her constitutional rights, Ms. Vierbuchen has been stigmatized. She is required to regularly receive intrusive COVID-19 tests when others do not have to; she is unable to have unrestricted access to her workplace; she must produce/confirm a negative COVID-19 test for entry when vaccinated employees do not; and she has been threatened that termination will result in the loss of her vested federal retirement benefits. These experiences have caused Ms. Vierbuchen great emotional stress and harm.

115.   Facially and as applied, the vaccine mandate violates Ms. Vierbuchen's fundamental Fifth Amendment Due Process privacy and bodily integrity rights and liberty interests.

## CLAIMS FOR RELIEF

### First Claim for Relief

#### *Violation of the Separation of Powers*

116.   Ms. Vierbuchen repeats paragraphs 1-115.

117.   The Constitution of the United States "divide[s] the federal government's powers into "three defined categories, Legislative, Executive, and Judicial." *INS v. Chadha*, 462 U.S. 919, 951 (1983). Congress holds the power to make laws as enumerated in Article I, while Article II vests the President with "[t]he

executive Power" and assigns him the solemn responsibility to "take Care that the Laws be faithfully executed." U.S. Const. art. II, §§ 1, 3.

118. Federal employees do not lose their personal autonomy over medical decisions by agreeing to serve the people of the United States. Nor do executive branch officials have dictatorial authority over the lives and livelihoods of those they supervise.

119. "The relations between the United States and its employees have presented a myriad of problems with which the Congress over the years has dealt." *United States v. Gilman*, 347 U.S. 507, 509 (1954). Some areas in the "complex of relations between federal agencies and their staffs" present "questions of policy upon which Congress has not spoken." *Id.*

120. Courts "expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance.'" *Alabama Assoc. of Realtors v. Dep't of Health and Human Servs.*, 141 S. Ct. 2485, 2489 (2021) (quoting *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014)). Congress does not hide elephants in mouseholes. *See Whitman v. Am. Trucking Ass'n,* 531 U.S. 457, 468 (2001); *Banks v. Booth,* 3 F.4th 445, 449 (D.C. Cir. 2021). The President's vaccine mandate is of "vast economic and political significance." *See* ¶¶ 76-78, *supra.*

121. The Defendants cannot order Ms. Vierbuchen to submit to vaccination without clear Congressional authority for such a command.

122. The laws of the United States nowhere expressly authorize the President's vaccine mandate.

123. Congress has not enacted any such authority since the COVID-19 vaccines became available.

124. The authority to issue vaccine mandates has never been granted by Congress. Congress has never authorized the President to exercise such control over civil servants because he deems it necessary. The White House Press Secretary explicitly recognized this lack of authority when she said that mandates were not the role of the federal government.

125. The President's Executive Orders do not cite to any authority that allows the President to order federal employees to submit to vaccination.

126. The President does not, on his own, possess the authority to order Ms. Vierbuchen to submit to vaccination.

127. The Task Force does not have the authority to order Ms. Vierbuchen to submit to vaccination. Nor does it have the authority to compel DOJ to order her to do so.

128. OPM does not have the authority to order Ms. Vierbuchen to submit to vaccination. Nor does it have the authority to compel DOJ to order her to do so.

129. DOJ does not have the authority to order Ms. Vierbuchen to submit to vaccination. Even if it does, DOJ's orders have not relied on any such alleged authority, but rather have relied on the President's Executive Order. Indeed, DOJ's

Safety Plan and Guidance currently decline to require vaccination by employees for reasons of health, safety, or otherwise.

130.    None of the laws cited by Executive Order 14,043, explicitly delegate to the President the authority to require COVID-19 vaccination (or any other vaccination) as a condition of employment in the federal civil service. *Alabama Assoc. of Realtors*, 141 S. Ct. at 2489.

131.    The Defendants cite Executive Order 14,043 and the Task Force guidance as authority for the vaccine mandate, and for their orders and threats to Ms. Vierbuchen. However, neither is a lawful authority. The federal civilian employee vaccine mandate imposed by Executive Order 14,043 and the Task Force and agency actions in furtherance thereof, all as described herein, are *ultra vires* and violate the separation of powers under Article I, § 1 and Article II, §§ 1 and 3 of the Constitution.

Second Claim for Relief

*Violation of Ms. Vierbuchen's Constitutional Privacy Rights*

132.    Ms. Vierbuchen repeats paragraphs 1-131.

133.    The Fifth Amendment Due Process Clause guarantees Ms. Vierbuchen's right to and fundamental liberty interest in privacy and bodily integrity. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *Rochin v. California*, 342 U.S. 165 (1952); *see also Planned Parenthood of SE Penn. v. Casey*, 505 U.S. 833, 849 (1992); *Roe v. Wade*, 410 U.S. 113, 153 (1973).

134.     The Fourth Amendment prohibits certain compelled intrusions into the body and analyses of breath or blood without individualized suspicion and a warrant. *Winston v. Lee,* 470 U.S. 753, 759 (1985).

135.     The forcible injection of unwanted and unnecessary medication into Ms. Vierbuchen against her will is a substantial interference with her liberty. *Washington v. Harper*, 494 U.S. 210, 229 (1990).

136.     Ms. Vierbuchen does not want or need the COVID-19 vaccine mandated by the Defendants because she has infection-acquired immunity. Defendants repeated orders to her to submit to injection of a drug are without basis in law and violate her constitutional rights.

137.     Defendants' requirement that she subject herself to mandatory testing and reporting without at least an individualized suspicion that she poses a risk to others different in quality or nature from a person with injection-acquired immunity, is a violation of her Fourth Amendment rights. *See Schmerber v. California,* 384 U.S. 757, 767 (1966).

138.     The President's vaccine mandate, imposed by Executive Order 14,043, and the actions in furtherance thereof by his officers, as described herein, including their orders that Ms. Vierbuchen submit to injection, violate Ms. Vierbuchen's fundamental Due Process rights and liberty interest of privacy and bodily integrity, and her Fourth Amendment rights to personal privacy and dignity against unwarranted intrusion by the government.

Third Claim for Relief

*Imposing an Unconstitutional Condition on Fundamental Constitutional Rights*

139.   Ms. Vierbuchen repeats paragraphs 1-138.

140.   The Defendants may not coerce Ms. Vierbuchen into giving up her constitutional rights, including her right to privacy and her fundamental liberty interest in bodily integrity, by unlawfully threatening to terminate her federal civilian employment and to strip her of her vested retirement benefits earned through over two decades of tireless service. *See Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 545 (1983).

141.   The unconstitutional conditions doctrine protects constitutional rights "by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).

142.   Among other things, it prevents the Defendants from placing an unconstitutional condition on Ms. Vierbuchen's employment. *See, e.g., Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *United Public Workers v. Mitchell*, 330 U.S. 75, 100 (1947).

143.   Courts have applied the unconstitutional conditions doctrine to safeguard constitutional rights under the First Amendment, *see Perry*, 408 U.S. at 597, and the Fifth Amendment, *see Koontz*, 570 U.S. at 604-05.

144.    The Fifth Amendment Due Process Clause guarantees Ms. Vierbuchen's fundamental right to bodily integrity, *see Glucksberg*, 521 U.S. at 720, including the freedom from the forcible injection of medication. *See Harper*, 494 U.S. at 229.

145.    Ms. Vierbuchen also has a significant property interest in her federal employment and benefits and in her professional reputation. *McCabe v. Barr*, 490 F.Supp.3d 98, 220-222 (D.D.C. 2020).

146.    Because of the President's campaign to wrongly stigmatize and smear unvaccinated individuals, including Ms. Vierbuchen, as persons responsible for the COVID-19 pandemic, and because of the unconstitutional and *ultra vires* Executive Order 14,043 and the Task Force and agency actions taken to implement same, all as described herein, Ms. Vierbuchen faces reputational harm, discrimination, and discipline, up to and including removal from federal service, unless she submits to vaccination.

147.    The Defendants' federal civilian employee vaccine mandate violates the unconstitutional conditions doctrine by promising to deprive Ms. Vierbuchen of public employment unless she gives up her fundamental rights to and liberty interests in privacy and bodily integrity.

<u>Fourth Claim for Relief</u>

*Mandamus*

148.    Ms. Vierbuchen repeats paragraphs 1-147.

34

149.   The orders issued to Ms. Vierbuchen by the President's officers for the purpose of implementing his vaccine mandate are beyond the Defendants' statutory power and unconstitutional.

150.   The All Writs Act, 28 U.S.C. § 1651 provides federal courts with the authority to issue writs of mandamus.

151.   The Supreme Court has held that when a federal official acts *ultra vires* of statutorily delegated authority, or acts unconstitutionally, the courts may issue a writ of mandamus to protect those harmed by the unlawful action. *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682 (1949); *Dugan v. Rank*, 372 U.S. 609 (1963).

152.   A writ of mandamus should issue here.

Fifth Claim for Relief

*Violation of the Administrative Procedure Act*

153.   Ms. Vierbuchen repeats paragraphs 1-152.

154.   Executive Order 14,043 cites 5 U.S.C. §§ 3301, 3302, and 7301 as its authority.

155.   These sections, respectively, state "The President may prescribe such regulations," "The President may prescribe rules," and "The President may prescribe regulations."

156.   To the extent these provisions allow for a vaccine mandate, which they do not, any such requirement must be adopted by rule or regulation in accordance with Title 5 of the United States Code.

157.    The Defendants did not follow the law and undertake rulemaking to justify and impose the injection mandate. Instead, they simply decreed it by memoranda and emails. *See* <u>Exhibits 8-11</u>.

158.    DOJ's failure to follow its own Safety Plan and February Guidance, or to amend and re-promulgate these documents through any deliberative process whatsoever, precludes it from imposing the President's vaccine mandate on Ms. Vierbuchen.

159.    The actions of the President's officers implementing Executive Order 14,043, as described herein, are reviewable under 5 U.S.C. § 704.

160.    The actions of the President's officers implementing Executive Order 14,043, as described herein, should be held unlawful and set aside under 5 U.S.C. § 706(2)(A)-(D).

161.    To prevent Ms. Vierbuchen from suffering irreparable injury, she should be granted relief pending review under 5 U.S.C. § 704, including all necessary and appropriate process to postpone the effect of the Defendants' actions, as described herein, and to preserve her status and rights.

### RELIEF REQUESTED

Wherefore, Ms. Vierbuchen respectfully requests the following relief.

A.    A declaration that the President's Task Force, created by Executive Order 13,991, is not a "safety council" and it does not have the authority to issue

binding guidance on Executive Branch agencies, and to the extent it has attempted to do so, those actions are *ultra vires* and without legal force or effect.

     B.     A declaration that the President's federal civilian employee vaccine mandate imposed by Executive Order 14,043 and the various Task Force and agency actions taken by his officers to implement it, including but not limited to the orders given to Ms. Vierbuchen, are *ultra vires* and unenforceable.

     C.     A declaration that the actions of the President's officers implementing his federal civilian employee vaccine mandate violate Ms. Vierbuchen's Fifth Amendment and Fourth Amendment privacy rights.

     D.     A writ of mandamus preventing the named officials from continuing to order Ms. Vierbuchen and others similarly situated from complying with Executive Order 14,043 and the various Task Force and agency actions taken in response thereto, all as described herein, as *ultra vires* and unenforceable.

     E.     Relief pending review under 5 U.S.C. § 704.

     F.     Permanent injunctive relief.

     G.     Reasonable costs and attorney fees.

     H.     Any other relief that the Court deems just and proper.

January 4, 2022                         Respectfully submitted,


John G. Knepper
Wyoming Bar No. 7-4608
Law Office of John G. Knepper, LLC
P.O. Box 1512
Cheyenne, Wyoming 82003
Telephone: (307) 632-2842
Email: John@KnepperLLC.com


Andrew J. Block
Virginia State Bar No. 91537
America First Legal Foundation
300 Independence Ave, SE
Washington, D.C. 20003
Telephone: (202) 836-7958
Email: Andrew.Block@aflegal.org
(Motion for admission *pro hac vice* pending)