FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2022 MAR -4  PM 3: 15

MARGARET BOTKINS. CLERK
CASPER

**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

MARGARET M. VIERBUCHEN,

    Plaintiff,

v.

    Case No. 22-CV-001-SWS

JOSEPH R. BIDEN, JR., President of the
United States; *et al.*,

    Defendants.

---

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

---

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction
and supporting memorandum (Docs. 10, 11). Defendants filed an opposition thereto (Doc.
14), and Plaintiff replied (Doc. 15). Plaintiff Margaret Vierbuchen requests the Court
"preliminarily enjoin the Defendants' ongoing and repeated orders that she submit to
COVID-19 vaccination and the continuous testing requirement." (Doc. 10 p. 1.) The Court
denies the request to enjoin Executive Order 14043 without prejudice because it is currently
the subject of a nationwide injunction (and was at the time Ms. Vierbuchen filed her
motion). The Court denies the request to enjoin the Department of Justice's COVID-19
testing protocol for unvaccinated employees with prejudice because Ms. Vierbuchen has
not carried her burden of showing she is likely to prevail on the merits of that claim.

### BACKGROUND

Ms. Vierbuchen is an Assistant United States Attorney, currently working as a

federal prosecutor in the District of Wyoming.  She "contracted COVID-19 in November 2020 and recovered, thereby acquiring natural immunity against the disease."  (Compl. (Doc. 1) ¶ 9.)  She was tested for the presence of antibodies three times in 2021, and "[a]ll three tests were positive for the presence of COVID-19 antibodies."  (Vierbuchen Aff. (Doc. 10-1) ¶ 4.)  She has not been vaccinated against COVID-19 and asserts she "do[es] not want or need it."  (Vierbuchen Aff. (Doc. 10-1) ¶ 5.)

On September 9, 2021, President Biden signed and issued Executive Order 14043, where he determined that "it is necessary to require COVID-19 vaccination for all Federal employees, subject to such exceptions as required by law."  *Requiring Coronavirus Disease 2019 Vaccination for Federal Employees*, 86 Fed. Reg. 50,989 (Sep. 9, 2021). Through Executive Order 14043, he ordered:

> Each [federal] agency shall implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees, with exceptions only as required by law.

86 Fed. Reg. at 50,990.

In implementing the President's vaccination requirement for its employees, the Department of Justice (DOJ) instructed each employee they would be required to attest to their vaccination status.  (Doc. 1-12 p. 1 (email from Assistant Attorney General for Administration Lee J. Lofthus to DOJ federal employees).)  Additionally, in October 2021, the DOJ implemented a COVID-19 testing protocol for employees who were not fully vaccinated:

> The Department has determined as a matter of policy that employees who attest to not yet being fully vaccinated, prior to entering a Department workplace other than their telework location, will have to provide to their

> supervisor (or component designee) a negative COVID-19 test result from within the previous three days.... To monitor and enforce this requirement, supervisors will be following up with employees who attest to not being fully vaccinated. The Department will not prohibit an unvaccinated employee from entering the workplace if they follow the testing protocol.
> . . .
> Employees who are not fully vaccinated and who provide a recent negative test must follow Centers for Disease Control and Prevention (CDC) and Department guidance for unvaccinated employees while they are in a federal facility, including masking and physical distancing requirements.

(*Id.* pp. 1-2.)

On October 18, 2021, Ms. Vierbuchen attested that she was "not vaccinated." (Compl. (Doc. 1) ¶ 62.) Around that same time, she also submitted a request for reasonable accommodation to be excused from the vaccination requirement "based on the science behind natural immunity." (Christianson Decl. (Doc. 14-1) ¶¶ 3-4; Vierbuchen Aff. (Doc. 10-1) ¶ 9.) The DOJ requested Ms. Vierbuchen also "have a doctor/medical professional fill out a different, 2-page form that appeared to have been recently created to address the vaccine mandate specifically." (Vierbuchen Aff. (Doc. 10-1) ¶ 9.) Ms. Vierbuchen did not comply. Instead, she "submitted a positive COVID-19 antibody test dated October 20, 2021, as further proof of [her] natural immunity." (*Id.*) On November 8, 2021, the U.S. Attorney's Office for the District of Wyoming informed Ms. Vierbuchen her reasonable-accommodation request was denied. (Christianson Decl. (Doc. 14-1) ¶ 4.)

On November 19, 2021, Ms. Vierbuchen's supervisor sent her an email concerning her failure to obtain full vaccination by the deadline:

> This email constitutes a written counseling and instruction related to your failure to comply with the Department of Justice's requirement that all Department employees be fully vaccinated by November 22, 2021 (unless approved for an exception due to a religious or medical reason).... You have

not received an exception, nor do you have a request pending.

Pursuant to OPM [Office of Personnel Management] Guidance, the enforcement process begins with a 5-day period of education and counseling. As part of this counseling period, I am providing you with information regarding the benefits of vaccination and ways to obtain the vaccine.... **I am again informing you that failure to comply with this direction may lead to discipline up to and including removal or termination.**

Finally, I am instructing you to submit documentation establishing the initiation of the vaccination process within 5 calendar days of your receipt of this memorandum.... **Failure to comply with this instruction may result in disciplinary action up to and including removal from Federal service.**

(Doc. 1-14 pp. 2-3 (emphases in original).)  Ms. Vierbuchen did not initiate vaccination following this email from her supervisor.  As of February 14, 2022, "the United States Attorney's Office for the District of Wyoming has not sent Plaintiff any letter of reprimand, suspended her, or provided notice that she will be terminated." (Christianson Decl. (Doc. 14-1) ¶ 6.)

Ms. Vierbuchen filed this lawsuit on January 4, 2022, alleging several bases Executive Order 14043 exceeds lawful authority and should be enjoined and vacated.  She then filed the instant motion for preliminary injunction on February 3, 2022, asking the Court "to preliminarily enjoin the Defendants' ongoing and repeated orders that she submit to COVID-19 vaccination and the continuous testing requirement."  (Doc. 10 p. 1.) Defendants oppose any preliminary injunction. (Doc. 14.)

## PRELIMINARY INJUNCTION STANDARD OF REVIEW

Preliminary injunctions are permitted by Federal Rule of Civil Procedure 65.

A preliminary injunction has the limited purpose of preserving the relative positions of the parties until a trial on the merits can be held.  It is an extraordinary remedy never awarded as of right.  A party may be granted a

preliminary injunction only when monetary or other traditional legal remedies are inadequate, and the right to relief is clear and unequivocal.

Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking a preliminary injunction must show: (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.

*DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1269–70 (10th Cir. 2018) (internal citations and quotation marks omitted).

## DISCUSSION

The Court will examine Ms. Vierbuchen's preliminary-injunction motion as requesting two forms of relief: (1) to preclude enforcement of Executive Order 14043, and (2) to preclude enforcement of the DOJ's COVID-19 testing protocol for non-vaccinated federal employees.

## 1.    Executive Order 14043 - Federal Employee Vaccination Mandate

As noted above, Executive Order 14043 is already the subject of a nationwide preliminary injunction precluding its enforcement. *Feds for Medical Freedom v. Biden*, --- F. Supp. 3d ---, 2022 WL 188329, at *7-8 (S.D. Tex. Jan. 21, 2022) (order granting nationwide preliminary injunction barring the implementation or enforcement of Executive Order 14043); *Feds for Medical Freedom v. Biden*, --- F. 4th ---, 2022 WL 391820, at *1 (5th Cir. Feb. 9, 2022) (per curiam) (carrying with the case the Government's motion to stay the injunction pending appeal). The Court finds the nationwide preliminary injunction issued two weeks prior to Ms. Vierbuchen's motion for preliminary injunction, which remains in place as of the date of this Order, renders moot Ms. Vierbuchen's request to

preliminarily enjoin Executive Order 14043.  Consideration of Ms. Vierbuchen's request

to preliminarily enjoin Executive Order 14043 would be a duplication and uneconomical

use of judicial resources that risks inconsistent non-final rulings by different federal district

courts.  "As between federal district courts, however, though no precise rule has evolved,

the general principle is to avoid duplicative litigation." *Colorado River Water Conserv.*

*Dist. v. United States*, 424 U.S. 800, 817 (1976).  In light of the existing nationwide

injunction from the Southern District of Texas, the Court cannot conclude that irreparable

injury to Ms. Vierbuchen is likely in the absence of a duplicative injunction from the

District of Wyoming.

Consequently, Ms. Vierbuchen's request to preliminarily enjoin Executive Order

14043 will be denied as moot without prejudice to re-filing if the existing preliminary

injunction is reversed or otherwise fails to provide her requested relief.

The Court next turns to Ms. Vierbuchen's request to preliminarily enjoin the

enforcement of the DOJ's COVID-19 testing protocol for unvaccinated federal employees.

(*See* Doc. 11 p. 4 n.1 (noting the *Feds for Medical Freedom* case "did not consider the

testing requirements that Ms. Vierbuchen challenges here").)

## 2.    DOJ's COVID-19 Testing Protocol for Unvaccinated Employees

In the October 8, 2021 email to DOJ federal employees, Assistant Attorney General

Lee Lofthus explained the DOJ "has determined as a matter of policy that employees who

attest to not yet being fully vaccinated, prior to entering a Department workplace other than

their telework location, will have to provide to their supervisor (or component designee) a

negative COVID-19 test result from within the previous three days." (Doc. 1-12 p. 2.) The

Court concludes Ms. Vierbuchen is not entitled to a preliminary injunction against this testing protocol because she has not shown a likelihood of success on the merits.

### 2.1    <u>Fourth Amendment Unreasonable Search</u>

Ms. Vierbuchen argues the testing protocol unlawfully infringes upon her due process and Fourth Amendment rights. (Doc. 11 pp. 17-25.) Looking first at her claim that COVID-19 testing constitutes an illegal search, she contends, "Defendants' requirement for unvaccinated employees to undergo semiweekly testing entails bodily intrusions and extractions of bodily material for chemical analyses." (*Id.* p. 18.) The Court finds it unlikely she will prevail on this claim.

Several courts have already denied preliminary injunctions against COVID-19 testing requirements under the Fourth Amendment, and this Court finds their reasoning persuasive. For example, in *Burcham v. City of Los Angeles*, --- F. Supp. 3d ---, 2022 WL 99863 (C.D. Cal. Jan. 7, 2022), city police department employees challenged an ordinance requiring unvaccinated employees to submit to weekly testing, contending it violated their Fourth Amendment protection against unreasonable searches and seizures. *Id.* at *3. The district court concluded the plaintiffs' "Fourth Amendment privacy rights are inarguably raised by a requirement that they submit to mandatory COVID-19 tests," but also determined the intrusion was reasonable under a special-needs analysis. *Id.* at *3-6. Not only was a preliminary injunction denied in that case, but the district court found the plaintiffs had failed to state a viable Fourth Amendment claim and dismissed the claim under Fed. R. Civ. P. 12(b)(6). *Id.* at *6, 9.

Similarly, in *Streight v. Pritzker*, No. 3:21-CV-50339, 2021 WL 4306146 (N.D. Ill.

Sept. 22, 2021), the plaintiff sought a preliminary injunction against his college's weekly

COVID-19 testing requirement for unvaccinated students, contending the testing protocol

was an illegal search and seizure under the Fourth Amendment. *Id.* at *1, 4. The district

court there assumed without deciding the challenged testing constituted a search under

Fourth Amendment, but concluded the intrusion was reasonable under a special-needs

analysis. *Id.* at *4-8. *See also Aviles v. Blasio*, No. 20 CIV. 9829 (PGG), 2021 WL 796033,

at *21-23 (S.D.N.Y. Mar. 2, 2021) (concluding the random COVID-19 testing requirement

for public school students was reasonable under a special-needs analysis and denying

preliminary injunction).

"'Special needs' is the label attached to certain cases where 'special needs, beyond

the normal need for law enforcement, make the warrant and probable-cause requirement

impracticable.'" *Doe v. Woodard*, 912 F.3d 1278, 1291 (10th Cir. 2019) (quoting *Dubbs

v. Head Start, Inc.*, 336 F.3d 1194, 1212 (10th Cir. 2003)); *see Burcham*, 2022 WL 99863,

at *3 ("alleged Fourth Amendment violations that are not related to law enforcement

purposes are analyzed under the judicially-crafted special-needs rubric, not under the

traditional search-and-seizure analysis") (citing *Vernonia Sch. Dist.*, 515 U.S. at 653). As

the DOJ's COVID-19 testing protocol in this case is "divorced from the [Government's]

general interest in law enforcement," *Ferguson v. City of Charleston*, 532 U.S. 67, 79

(2001), Ms. Vierbuchen's Fourth Amendment claim of illegal search concerning the testing

protocol is subject to the special-needs analysis.

A four-Justice plurality set forth the test applicable to searches conducted outside

the normal need for law enforcement and upon government employees in *O'Connor v.*

*Ortega*, 480 U.S. 709 (1987).

> The *O'Connor* Court did disagree on the proper analytical framework for Fourth Amendment claims against government employers. A four-Justice plurality concluded that the correct analysis has two steps. First, because "some government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable," *id.*, at 718, 107 S.Ct. 1492, a court must consider "[t]he operational realities of the workplace" in order to determine whether an employee's Fourth Amendment rights are implicated, *id.*, at 717, 107 S.Ct. 1492. On this view, "the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *Id.*, at 718, 107 S.Ct. 1492. Next, where an employee has a legitimate privacy expectation, an employer's intrusion on that expectation "for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances." *Id.*, at 725–726, 107 S.Ct. 1492.
>
> Justice SCALIA, concurring in the judgment, outlined a different approach. His opinion would have dispensed with an inquiry into "operational realities" and would conclude "that the offices of government employees ... are covered by Fourth Amendment protections as a general matter." *Id.*, at 731, 107 S.Ct. 1492.

*City of Ontario, Cal. v. Quon*, 560 U.S. 746, 756–57 (2010). Justice Scalia stated in his *O'Connor* concurrence, "The case turns, therefore, on whether the Fourth Amendment was violated—*i.e.*, whether the governmental intrusion was reasonable. It is here the government's status as employer, and the employment-related character of the search, become relevant." *O'Connor*, 480 U.S. at 732 (Scalia, J., concurring).

The Supreme Court in *Quon* did not settle whether the *O'Connor* plurality controls, instead determining the search in that case was reasonable. *Quon*, 560 U.S. at 757. This Court does the same here. For purposes of this Order, the Court assumes without deciding that requiring Ms. Vierbuchen to provide a negative COVID-19 test result from the past three days to gain physical admission to the workplace constitutes a "search" under the

Fourth Amendment. (*But see* Doc. 14 p. 18 (arguing that "workplace COVID-19 screening is not a 'search' or 'seizure' implicating the Fourth Amendment").) Applying either the *O'Connor* plurality or Justice Scalia's concurrence, the Court finds the testing protocol at issue was a reasonable intrusion. The true measure of the constitutionality of a Fourth-Amendment intrusion is "reasonableness." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995).

For "legitimate work-related, noninvestigatory intrusions" to be constitutionally sound, "both the inception and the scope of intrusion must be reasonable." *O'Connor*, 480 U.S. at 725-26 (plurality). "Even if a warrant is not required, a search is not beyond Fourth Amendment scrutiny; for it must be reasonable in its scope and manner of execution." *Maryland v. King*, 569 U.S. 435, 448 (2013). "This application of 'traditional standards of reasonableness' requires a court to weigh 'the promotion of legitimate governmental interests' against 'the degree to which [the search] intrudes upon an individual's privacy.'" *Id.* (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).

Here, the legitimate governmental interest served by the DOJ's COVID-19 testing protocol is "screening employees in shared workspaces for active infection with a highly communicable virus that has killed over 910,000 Americans." (Doc. 14 p. 19.) The DOJ's concern in limiting its employees' exposure to COVID-19 is (and was at the time the testing protocol was implemented) both immediate and great. COVID-19 has been a dominating and devastating feature of life for the past two years. Infection rates have ebbed and flowed over that time with the emergence of new variants, but new infections have continued the entire time. Indeed, with the Omicron variant, reinfections of those who previously had

COVID-19 (like Ms. Vierbuchen) as well as "breakthrough infections" of those who were fully vaccinated increased substantially. Nature Journal, *COVID Reinfections Surge During Omicron Onslaught* (Feb. 16, 2022), available at https://www.nature.com/articles/d41586-022-00438-3 ("Since the Omicron variant of SARS-CoV-2 was first detected, the number of people reinfected with the coronavirus has been rising sharply - a trend that was not observed with previous variants."); Nature Journal, *How Well Can Omicron Evade Immunity from COVID Vaccines?* (Feb. 2, 2022), available at https://www.nature.com/ articles/d41586-022-00283-4 ("That suggests the Omicron variant is much better than Delta at breaking through the immunity conferred by vaccines."). Even in the past few weeks as infection rates have dropped in Wyoming, the virus continues to infect and harm individuals. For example, on March 2, 2022, the Wyoming Department of Health reported 85 new lab confirmed cases. Wyoming Department of Health, *Wyoming COVID-19 Data*, available at https://sites.google.com/wyo.gov/covid-19/home (last updated March 2, 2022).

A governmental interest more legitimate than curbing DOJ employees' exposure in the workplace to a deadly pandemic is hard to find. COVID-19 "spreads by person-to-person contact in confined indoor spaces, so causes harm in nearly all workplace environments." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 142 S. Ct. 661, 670 (2022) (Kagan, J., dissenting). Ms. Vierbuchen highlights the fact that the virus can be transferred anywhere, not just at the workplace. True enough, but obviously the DOJ has much more limited authority to implement protocols governing its employees' access or activities outside the workplace. Moreover, it is unquestionable that

it would be far easier for a DOJ office to manage a single employee's illness and accompanying absence from work than if that single employee was not screened and spread the virus to several coworkers in a confined workplace.

As to the character of the intrusion occasioned by the DOJ's testing protocol, the Court finds it is minimal. A COVID-19 test itself is relatively unintrusive, consisting of either a nasal swab or saliva sample. Neither is particularly humiliating or painful, and the test reveals no medical information beyond the presence of the virus. "This Court, like other courts to have considered the issue, finds both tests to be negligible intrusions." *Burcham*, 2022 WL 99863, at *5. The nasal swab is uncomfortable, but it "is performed in a matter of seconds; is not painful; and does not involve '[a body part or] function traditionally shielded by great privacy.'" *Id.* (quoting *Aviles*, 2021 WL 796033, at *22). And the saliva test "is one of the most minimally-invasive tests available, as it only requires a small vial of saliva and can be completed in a public setting, unlike blood or urine tests." *Streight*, 2021 WL 4306146, at *6. That a COVID-19 test is minimally intrusive weighs in favor of reasonableness. "The fact that an intrusion is negligible is of central relevance to determining reasonableness, although it is still a search as the law defines that term." *King*, 569 U.S. at 446; *see also Burcham*, 2022 WL 99863, at *4 ("Where an intrusion is brief, painless, and can be done with a minimum of inconvenience or embarrassment,' courts are less likely to find the intrusion unreasonable.") (internal quotations omitted).

Additionally, the DOJ's COVID-19 testing protocol is even less invasive when considering Ms. Vierbuchen has options to avoid the testing. She can telework. (*See* Doc. 1-12 (requiring a negative COVID-19 test from unvaccinated employees "prior to entering

a Department workplace **other than their telework location**") (emphasis added).) She could, of course, undertake vaccination in order to avoid testing. *See Streight*, 2021 WL 4306146, at \*6 ("he could be vaccinated to avoid the testing requirement and continue taking in-person courses"). And she could even work for a different employer who does not impose a vaccination or testing requirement. *See id.* Unlike most other Fourth Amendment searches, Ms. Vierbuchen has options available to avoid this "search," which minimizes the invasiveness of the DOJ's testing protocol.

In considering the efficacy of the DOJ's means for addressing the government concern, Ms. Vierbuchen charges that the DOJ's COVID-19 testing protocol "does both too much and too little." (Doc. 11 p. 24.) She asserts it does too much by requiring semiweekly tests regardless of an individual's personal risk factors, and it does too little by only requiring tests from unvaccinated employees. (*Id.*) Since COVID-19 broke out in the United States in early 2020, testing has been the backbone of this nation's attempt to reduce the spread of the virus by identifying and quarantining those infected. The DOJ's reliance on testing for unvaccinated employees may be an imperfect system, but the Court cannot say it is unconstitutionally imperfect. It attempts to strike a reasonable balance by testing those at the greatest risk of infection due to non-vaccination. And while previously-infected individuals, like Ms. Vierbuchen, have some level of protection from future illness, the Centers for Disease Control (CDC) states "the level of protection people get from having COVID-19 may vary depending on how mild or severe their illness was, the time since their infection, and their age." Centers for Disease Control, *Myths and Facts about COVID-19 Vaccines* (updated Dec. 15, 2021), available at https://www.cdc.gov/

coronavirus/2019-ncov/ vaccines/facts.html; *see also* Centers for Disease Control, *Getting*

*a COVID-19 Vaccine* (updated Feb. 22, 2022), available at

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/expect.html ("People who already

had COVID-19 and do not get vaccinated after their recovery are more likely to get

COVID-19 again than those who get vaccinated after their recovery."). In the face of both

grave threat and scientific uncertainty, the DOJ's testing protocol appears to be a

reasonably effective means of reducing the likelihood that an infected employee will

interact with and infect their coworkers in a shared workspace. *See Vernonia Sch. Dist.*,

515 U.S. at 663 ("We have repeatedly refused to declare that only the 'least intrusive'

search practicable can be reasonable under the Fourth Amendment.").

In weighing the various factors at issue here, and based on the information and

record currently before it, the Court cannot say Ms. Vierbuchen is substantially likely to

succeed on her claim that the DOJ's testing protocol violates the Fourth Amendment's

reasonableness requirement.

## 2.2    Fifth Amendment Due Process

Ms. Vierbuchen's motion does not offer much analysis concerning her due process

claim as it relates to the testing protocol; her due process discussion is largely focused on

the vaccination requirement of Executive Order 14043. (Doc. 11 pp. 13-25.) However,

she notes, "For a reviewing court, the 'special needs' doctrine is similar to the Due Process

Clause's balancing test." (*Id.* p. 19.) She describes the balancing test as consisting of two

steps:

First, the government must demonstrate "a legitimate special need" for the

suspicion-less searches at issue. *See Washington* [*v. Unified Gov't of Wyandotte Cnty., Kan.*, 847 F.3d 1192,] 1198 [(10th Cir. 2017)] (discussing suspicion-less drug testing. If the government makes this threshold showing, then the court must determine 'if the government's interests outweigh the individual's privacy interests." *See id.* This "balancing test ... looks to the nature of the privacy interest, the character of the intrusion, and the nature and immediacy of the government's interest." *Dubbs*, 336 F.3d at 1213.

(Doc. 11 p. 19.) The Court has already conducted this analysis above and found the Government's legitimate and immediate interest greatly outweighs the minimal intrusion of the DOJ's COVID-19 testing protocol.

Moreover, Ms. Vierbuchen does not argue or identify any authority to suggest she has a fundamental right to be free from the requirement of providing a recent negative COVID-19 test prior to entering a shared workplace. Indeed, "federal courts have consistently held that vaccine mandates do not implicate a fundamental right and that rational basis review therefore applies in determining the constitutionality of such mandates." *Valdez v. Grisham*, --- F.3d ---, 2021 WL 4145746, at *5 (D.N.M. Sep. 13, 2021)) (collecting cases). If the vaccination requirement itself does not implicate a fundamental right, then the testing protocol is even less likely to infringe a fundamental liberty interest. *See also Burcham*, 2022 WL1 99863, at *7 ("There is also no fundamental right to continued governmental employment."). Consequently, the Court concludes rational-basis review is the proper standard for this issue. And based on the discussion above, the Court has little trouble concluding the testing protocol is rationally related to the legitimate purpose of reducing the spread of COVID-19 among the DOJ's employees.

Ms. Vierbuchen has not carried her burden of demonstrating a substantial likelihood of success on her claim that the DOJ's testing protocol violates the Fifth Amendment's due

process guarantee.

## CONCLUSION AND ORDER

Ms. Vierbuchen's motion for a preliminary injunction will be denied. The request to enjoin Executive Order 14043 is denied without prejudice because it is currently the subject of a nationwide injunction. The request to enjoin the DOJ's COVID-19 testing protocol for unvaccinated employees is denied with prejudice because Ms. Vierbuchen has not carried her heavy burden of showing she is likely to prevail on the merits of that request under either the Fourth or Fifth Amendment.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 10) is **DENIED**. Plaintiff's request to enjoin Executive Order 14043 is **denied without prejudice**, while her request to enjoin the DOJ's COVID-19 testing protocol for unvaccinated employees is **denied with prejudice**.

**ORDERED:** March ___4___, 2022.

_____
Scott W. Skavdahl
United States District Judge